RICHARD WARREN KING AND LAURA R. KING, PLAINTIFF-APPELLEES V. MILLARD T. OWEN, III, AND OWEN SURVEYING INCORPORATED, AND CHICAGO TITLE INSURANCE COMPANY, DEFENDANTS-APPELLANTS V. WILLIAM R. DAVIS, INDIVIDUALLY, AND WILLIAM R. DAVIS AS A GENERAL PARTNER OF COOPER, DAVIS & COOPER, ATTORNEYS AT LAW, A NORTH CAROLINA GENERAL PARTNERSHIP, THIRD PARTY DEFENDANTS

No. COA03-1414

(Filed 7 September 2004)

**Arbitration and Meditation— validity of arbitration agreement— failure to show mutual agreement—equitable estoppel**

The trial court did not err by finding that no valid arbitration agreement existed between defendant title insurance company and plaintiffs, because: (1) defendant failed to meet its burden to prove the parties mutually agreed to arbitrate their dispute; (2) the record is devoid of any indication that equitable estoppel was raised by defendant before the trial court; (3) defendant failed to

raise the issue at trial concerning whether plaintiffs' failure to object to the arbitration provision within a reasonable period of time constituted an acceptance of that provision of the policy; and (4) the first time an arbitration clause appeared was in the final title policy which was issued over three months after closing of the pertinent property.

Appeal by defendants-appellants from order entered 28 August 2003 by Judge Ola Lewis in Cumberland County Superior Court. Heard in the Court of Appeals 26 May 2004.

*Mitchell, Brewer, Richardson, Adams, Burge & Boughman, by William O. Richardson, Ronnie M. Mitchell, Coy E. Brewer, Charles M. Brittain, III, for plaintiffs-appellees.*

*Maupin Taylor, P.A., by Mark S. Thomas, Ronald R. Rogers, and Joshua B. Royster, attorneys for defendants-appellants.*

STEELMAN, Judge.

Richard and Laura King (plaintiffs) acquired a tract of land in Fayetteville, North Carolina on 1 October 1999. They intended to operate a gas station and convenience store on the property. Prior to closing, plaintiffs hired Millard Owen, III and Owen Surveying Incorporated (Owen) to survey the property, and hired William Davis of Cooper, Davis & Cooper, Attorneys at Law, a North Carolina General Partnership (third party defendants), as their attorney for the closing. Third party defendants did not order a commitment for title insurance prior to closing. A policy of title insurance on the property was issued to plaintiffs on 11 January 2000 by Chicago Title Insurance Company (Chicago Title).

Following the acquisition of the property, plaintiffs discovered that it was encumbered by an easement to the North Carolina Department of Transportation. Plaintiffs contend that the easement renders the property unfit for their intended use. On 26 July 2001 plaintiffs filed a complaint against Owen claiming they were negligent in conducting the survey of the property. Owen filed a third party complaint against third party defendants. On 28 February 2003 plaintiffs amended their complaint and added Chicago Title as a party defendant. On 2 May 2003 Chicago Title filed its answer, which included a demand for arbitration of plaintiff's claims against it, a motion to stay claims pending arbitration, and a motion to dismiss. The motion to stay claims pending arbitration and to compel arbitra-

tion was heard on 2 June 2003. The trial court denied Chicago Title's motion by order dated 25 August 2003. Chicago Title appeals.

In Chicago Title's first assignment of error, it argues that the trial court erred in finding no valid arbitration agreement existed between Chicago Title and plaintiffs. We disagree.

An interlocutory order that denies arbitration affects a substantial right, and thus this Court has jurisdiction over an appeal from such an order. *Keel v. Private Bus., Inc.*, 2004 N.C. App. LEXIS 571 (N.C. Ct. App. 2004); *Raspet v. Buck*, 147 N.C. App. 133, 135, 554 S.E.2d 676, 677 (2001).

"[W]e note that public policy favors settling disputes by means of arbitration. However, before a dispute can be settled in this manner, there must first exist a valid agreement to arbitrate. The law of contracts governs the issue of whether there exists an agreement to arbitrate." *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271, 423 S.E.2d 791, 794 (1992) (citations omitted). The party seeking arbitration bears the burden of proving the parties mutually agreed to the arbitration provision. *Milon v. Duke Univ.*, 145 N.C. App. 609, 617, 551 S.E.2d 561, 566 (2001) *rev'd on other grounds by* 355 N.C. 263; 559 S.E.2d 789 (2002), *cert. denied*, 536 U.S. 979, 153 L. Ed. 2d 878 (2002).

The trial court's order in this matter made detailed findings of fact and conclusions of law. On appeal, findings of fact made by the trial court are binding upon the appellate court in the absence of an assignment of error challenging those findings. *Rural Plumbing & Heating, Inc. v. Hope Dale Realty, Inc.*, 263 N.C. 641, 651, 140 S.E.2d 330, 337 (1965); *Dollar v. Town of Cary*, 153 N.C. App. 309, 310, 569 S.E.2d 731, 733 (2002). In this case, Chicago Title does not challenge any of the trial court's findings. Our review is therefore limited to whether those findings support the trial court's conclusions of law. *Rural Plumbing*, 263 N.C. at 651, 140 S.E.2d at 337.

In the instant case the trial court found the following facts: 1) plaintiffs purchased the property on 1 October 1999; 2) page 2 of the settlement statement showed that plaintiff's paid $470.00 at closing to purchase title insurance; 3) at no time did plaintiffs discuss or negotiate with Chicago Title any arbitration provision; 4) plaintiffs did not execute an agreement containing an arbitration provision; 5) plaintiffs were not provided with any title insurance contract, agreement or policy containing an arbitration provision at closing; 6) on 4 January 2000 plaintiffs' attorney submitted to Chicago Title his final

title opinion on plaintiffs' property; 7) Chicago Title mailed to plaintiffs on or about 11 January 2000 a copy of a title insurance policy with a stated effective date of 1 October 1999; 8) the policy of title insurance did not bear plaintiffs' signatures, nor did it request plaintiffs to sign and return any documents; 9) no document containing an agreement to arbitrate was signed by plaintiffs, discussed with them, or provided to them at the time of closing.

Based on these findings of fact (which are not disputed by Chicago Title and are thus binding on appeal) the trial court concluded no valid arbitration agreement existed because Chicago Title failed to meet its burden to prove the parties mutually agreed to arbitrate their dispute. The trial court denied Chicago Title's motion to stay pending arbitration. We hold that the trial court's findings of fact support its conclusion that Chicago Title failed to demonstrate that there existed an agreement to arbitrate between the parties.

This case is governed by the now repealed Uniform Arbitration Act, N.C. Gen. Stat. Chapter 1, Article 45A.[1] In the instant case, plaintiff paid a one time premium of $470.00 at closing for title insurance. Plaintiffs did not receive the insurance policy in question until nearly three and one half months later. Chicago Title offered no evidence that plaintiffs were aware of the arbitration clause in the policy at the time they closed on the property, much less that the clause was the result of independent negotiation. As this Court stated in *Routh*, "an arbitration clause, such as the one at issue in the present case, is ordinarily negotiated at the outset of a contractual relationship in an 'arms-length negotiation.' " *Routh*, 108 N.C. App. at 274, 423 S.E.2d at 796. It was Chicago Title's burden to prove the existence of a valid arbitration agreement, and it was the province of the trial court to determine if Chicago Title met its burden. *Id.* at 271-72, 423 S.E.2d at 794.

As part of its argument under its first assignment of error, Chicago Title argues that plaintiffs are equitably estopped from denying their agreement to the arbitration provision. North Carolina Rules of Civil Procedure, Rule 8(c) requires that certain affirmative defenses, including estoppel and waiver, must be set forth affirmatively in a party's pleading. In its answer, Chicago Title pled eight sep-

---

1. "Repealed by Session Laws 2003-345, s. 1, effective January 1, 2004, and applicable to agreements to arbitrate made on or after that date." N.C. Gen. Stat. Chapter 1, Article 45A (2004). The contested arbitration agreement in the instant case was contained in a title insurance policy issued in 2000.

arate defenses to plaintiffs' complaint, including laches and failure to mitigate damages. Neither estoppel nor waiver were pled as defenses by Chicago Title in this matter.

The record before this Court is devoid of any indication that equitable estoppel was raised by Chicago Title before the trial court. Chicago Title cannot swap horses between courts in order to obtain a better mount on appeal. *Russell v. Buchanan*, 129 N.C. App. 519, 521, 500 S.E.2d 728, 730 (1998), *rev' denied*, 348 N.C. 501, 510 S.E.2d 655 (1998); *see also Anderson v. Assimos*, 356 N.C. 415, 572 S.E.2d 101 (2002).

Chicago Title further contends that plaintiffs failure to object to the arbitration provision within a reasonable period of time constitutes an acceptance of that provision of the policy. This is an assertion that plaintiff's waived any objection to the arbitration provision by their conduct. The record in this case is devoid of any indication that this theory was asserted before the trial court, and cannot now be raised upon appeal. *Russell*, 129 N.C. App. at 521, 500 S.E.2d at 730.

We further note that Chicago Title cites the reasoning of the Alabama Supreme Court in the case of *McDougle v. Silvernell*, 738 So. 2d 806 (Ala. S.C. 1999) as persuasive on the issue of whether there was an agreement to arbitrate in this case. In *McDougle*, plaintiffs acquired real estate and subsequently learned of defects in the title. Suit was instituted against the attorneys who handled the closing and certified the title. The attorneys were agents for the title insurance company. At closing a commitment for title insurance was issued to plaintiffs which stated that the commitment was subject to the conditions and stipulations contained in the title insurance company's form policy. Subsequent to closing, a policy of title insurance was issued containing a provision requiring arbitration of "any controversy or claim" arising out of the policy. The Supreme Court of Alabama held that the arbitration clause was incorporated by reference into the commitment for title insurance and was thus enforceable.

The present case is distinguishable from *McDougle*. There was no commitment for title insurance issued in this case prior to or at closing. The first time an arbitration clause appeared was in the final title policy which was issued over three months after closing. This assignment of error is without merit.

Having found that the trial court correctly held that there was not a valid and enforceable arbitration agreement, we need not address Chicago Title's remaining assignments of error.

AFFIRMED.

Judges TYSON and BRYANT concur.