IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-95

 No. COA20-313

 Filed 6 April 2021

 Mecklenburg County, No. 16 CVS 10961

 GEORGE W. JACKSON, on behalf of himself and others similarly situated, Third-
 Party Plaintiff,

 v.

 HOME DEPOT, U.S.A., INC. and CAROLINA WATER SYSTEMS, INC., Third-Party
 Defendants.

 Appeal by third-party defendant Home Depot, U.S.A., Inc., from order entered

 21 October 2019 by Judge Forrest D. Bridges in Mecklenburg County Superior Court.

 Heard in the Court of Appeals 10 March 2021.

 Whitfield Bryson LLP, by Daniel K. Bryson, Scott C. Harris, and J. Hunter
 Bryson, for third-party plaintiff-appellee.

 Erwin, Bishop, Capitano, & Moss, P.A., by Lex M. Erwin, and King & Spalding
 LLP, by S. Stewart Haskins, pro hac vice, for third-party defendant-appellant
 Home Depot, U.S.A., Inc.

 ZACHARY, Judge.

¶1 Third-Party Defendant Home Depot, U.S.A., Inc. (“Home Depot”) appeals from

 an order denying its motion to dismiss or stay in favor of arbitration. After careful

 review, we affirm the trial court’s order.

 Background

¶2 In July 2014, Third-Party Plaintiff George W. Jackson entered into agreements
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 with Third-Party Defendants Carolina Water Systems, Inc. (“CWS”) and Home Depot

 for the purchase and installation of a water-treatment system. The events leading up

 to these agreements form the basis of Jackson’s complaint in this case. However, the

 issue before us on appeal is Home Depot’s attempt to enforce an arbitration

 agreement that it asserts applies to Jackson’s claims. Without addressing the

 underlying merits of Jackson’s claims, we first describe the various agreements at

 issue in this case before describing the procedural history.

 I. The Agreements

 A. The CWS Purchase Agreement

¶3 On 24 July 2014, Jackson and a CWS representative executed an agreement

 (“the CWS Purchase Agreement”) that described the water-treatment equipment

 being sold and setting its price. The CWS Purchase Agreement contained an

 arbitration clause, which provided in pertinent part:

 THIS CONTRACT CONTAINS A BINDING
 AGREEMENT TO ARBITRATE ALL CLAIMS,
 DISPUTES AND CONTROVERSIES ARISING OUT OF
 OR IN CONNECTION WITH THIS CONTRACT. . . . Any
 controversy, claim or dispute arising out of or relating to
 this Agreement shall be submitted to arbitration in
 Charlotte, North Carolina in accordance with the rules and
 laws of the State of North Carolina.

 The next day, the water-treatment equipment was installed at Jackson’s home.

 B. The Home Depot Agreement

¶4 On 6 August 2014, Jackson and John Blum, the President of CWS, executed a
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 document entitled “Home Improvement Agreement: Approval of Completed

 Installation” (“the Home Depot Agreement”). Blum signed the document above a

 signature line that read: “Professional/Authorized Representative on Home Depot’s

 Behalf.” The Home Depot Agreement contained a merger clause, which provided in

 pertinent part:

 You understand this Agreement constitutes the entire
 understanding between You and Home Depot and may
 only be amended by a Change Order signed by Home Depot
 (or by Installation Professional or its authorized
 representative on Home Depot’s behalf) and You. This
 Agreement expressly supersedes all prior written or verbal
 agreements or representations made by Home Depot,
 Installation Professional, You, or anyone else. Except as set
 forth in this Agreement, You agree there are no oral or
 written representations or inducements, express or
 implied, in any way conditioning this Agreement, and You
 expressly disclaim their existence.

 (Emphasis added).

¶5 The Home Depot Agreement also provided for a separate financing agreement,

 while explicitly stating that Home Depot would not be a party to such an agreement:

 If You are financing this transaction in whole or in part,
 Your separate loan agreement (to which Home Depot is
 NOT a party) will determine: (i) the amount financed (the
 amount of credit provided to You); (ii) the associated
 finance charges (the dollar amount the loan will cost You);
 and (iii) the total payment (the amount You will have paid
 when You have made all scheduled payments). You will be
 further subject to Your loan agreement’s terms and
 conditions.
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 (Emphasis added).

¶6 The Home Depot Agreement did not contain any language regarding

 arbitration.

 C. The Card Agreement

¶7 At some point, Jackson entered into an agreement (“the Card Agreement”) with

 Citibank, N.A. (“Citibank”) to open an account for a Home Depot-branded credit card.

 The parties do not contend that Home Depot was a signatory to the Card Agreement.

¶8 The Card Agreement provided that “[f]ederal law and the law of South Dakota,

 where we are located, govern the terms and enforcement of this Agreement.”1 It also

 included an arbitration clause, stating that “[e]ither you or we may, without the

 other’s consent, elect mandatory, binding arbitration for any claim, dispute, or

 controversy between you and us[.]”

¶9 The Card Agreement further stated that the claims subject to arbitration

 include “[n]ot only ours and yours, but also Claims made by or against anyone

 connected with us or you or claiming through us or you, such as a co-applicant or

 authorized user of your account, an employee, agent, representative, affiliated

 1 We note that Jackson claims that “Home Depot failed to meet its burden of proving

 that [he] in fact agreed to the Citibank Cardholder Agreement and its arbitration clause.”
 However, under South Dakota law, “use of an accepted credit card . . . creates a binding
 contract between the card holder and the card issuer[.]” S.D. Codified Laws § 54-11-9 (2019).
 Here, it is undisputed that Jackson used the card to purchase the water-treatment system.
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 company, predecessor or successor, heir, assignee, or trustee in bankruptcy.” Various

 terms are specifically defined: the terms “we, us, and our mean Citibank,” and the

 terms “you, your, and yours mean the person who applied to open the account. It

 also means any other person responsible for complying with this Agreement.”

 II. Procedural History

¶ 10 On 9 June 2016, Citibank filed suit against Jackson in Mecklenburg County

 District Court seeking, inter alia, to collect the unpaid balance due on the Home

 Depot credit card. On 26 August 2016, Jackson filed his answer, in which he generally

 denied Citibank’s allegations, asserted various affirmative defenses, brought a class

 action counterclaim against Citibank, and brought third-party class action claims

 against Home Depot and CWS. Jackson’s third-party class action claims against

 Home Depot and CWS arose from alleged violations of the North Carolina statutes

 prohibiting referral sales and unfair or deceptive trade practices.

¶ 11 Thereafter, on 23 September 2016, Citibank voluntarily dismissed its claims

 against Jackson.

¶ 12 On 12 October 2016, Home Depot filed notice of removal of Jackson’s third-

 party suit from state court to the United States District Court for the Western District

 of North Carolina. Sixteen days later, Home Depot filed a motion in federal court to

 dismiss Jackson’s claims or, in the alternative, to stay Jackson’s claims in favor of

 arbitration.
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

¶ 13 On 8 November 2016, Jackson filed a motion in the federal court to remand the

 case to the state court. On 2 December 2016, Home Depot filed another motion in

 federal court to dismiss or stay in favor of arbitration. On 21 March 2017, the federal

 district court entered its order granting Jackson’s motion and remanding the case to

 Mecklenburg County Superior Court. Home Depot appealed the remand order to the

 United States Court of Appeals for the Fourth Circuit, which affirmed the federal

 district court’s order on 22 January 2018. Jackson v. Home Depot U.S.A., 880 F.3d

 165 (4th Cir. 2018).

¶ 14 On 23 April 2018, Home Depot filed a petition for writ of certiorari with the

 United States Supreme Court, seeking review of the Fourth Circuit’s ruling.

 Meanwhile, while the matter was on remand in Mecklenburg County Superior Court,

 on 10 May 2018, Home Depot and CWS filed a new motion to dismiss or stay in favor

 of arbitration. The United States Supreme Court granted Home Depot’s petition for

 writ of certiorari on 27 September 2018, and on 28 May 2019, it issued an opinion

 affirming the Fourth Circuit’s ruling. Home Depot U.S.A., Inc. v. Jackson, ___ U.S.

 ___, 204 L. Ed. 2d 34, reh’g denied, ___ U.S. ___, 204 L. Ed. 2d 1172 (2019).

¶ 15 On 19 June 2018, the Chief Justice of the North Carolina Supreme Court

 designated this matter as an “exceptional civil case” pursuant to Rule 2.1 of the

 General Rules of Practice, and assigned the Honorable Forrest D. Bridges to preside

 over the case.
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

¶ 16 On 6 September 2019, Home Depot and CWS’s motion to dismiss or stay in

 favor of arbitration came on for hearing before Judge Bridges in Mecklenburg County

 Superior Court. On 21 October 2019, the trial court entered its order denying the

 motion. Home Depot filed its notice of appeal on 20 February 2020.2

 Appellate Jurisdiction

¶ 17 As a preliminary matter, the trial court’s order denying Home Depot’s motion

 to dismiss or stay in favor of arbitration is interlocutory “because it does not

 determine all of the issues between the parties and directs some further proceeding

 preliminary to a final judgment.” Martin v. Vance, 133 N.C. App. 116, 119, 514 S.E.2d

 306, 308 (1999). “Ordinarily, interlocutory orders are not immediately appealable.”

 Hager v. Smithfield E. Health Holdings, LLC, 264 N.C. App. 350, 354, 826 S.E.2d

 567, 571, disc. review denied, 373 N.C. 253, 835 S.E.2d 446 (2019). However, this

 Court has previously determined that an appeal from an order denying arbitration,

 although interlocutory, “is immediately appealable because it involves a substantial

 right . . . which might be lost if appeal is delayed.” Pressler v. Duke Univ., 199 N.C.

 App. 586, 590, 685 S.E.2d 6, 9 (2009) (citation omitted). Accordingly, the interlocutory

 nature of the trial court’s order denying the motion does not deprive this Court of

 jurisdiction to reach the merits of this appeal.

 2 CWS did not join Home Depot’s appeal of the trial court’s order.
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

¶ 18 Also at issue is the timeliness of Home Depot’s notice of appeal. Home Depot

 filed its notice of appeal three months after the trial court entered the order from

 which Home Depot appeals. In its notice of appeal, Home Depot asserts that

 “[t]hrough some inadvertent error, the parties did not receive” the trial court’s order

 until the court notified the parties of the order by email on 22 January 2020. The

 record in this appeal contains no certificate of service of the superior court’s order.

¶ 19 Nonetheless, Home Depot’s notice is sufficient to confer jurisdiction on this

 Court. It is well settled that the appellee must establish that the notice of appeal was

 untimely where the record on appeal contains no certificate of service:

 Although this notice ordinarily would be untimely under
 N.C. R. App. P. 3(c), where there is no certificate of service
 in the record showing when [the] appellant was served with
 the trial court judgment, [the] appellee must show that
 [the] appellant received actual notice of the judgment more
 than thirty days before filing notice of appeal in order to
 warrant dismissal of the appeal.

 In re Duvall, 268 N.C. App. 14, 17, 834 S.E.2d 177, 180 (2019) (citation and internal

 quotation marks omitted). “[U]nless the appellee argues that the appeal is untimely,

 and offers proof of actual notice, we may not dismiss.” Id. (citation omitted).

¶ 20 In the instant case, Jackson does not argue that the appeal is untimely, nor

 does he offer proof of actual notice or service more than 30 days prior to Home Depot’s

 filing of its notice of appeal. Thus, Home Depot’s appeal is properly before us. See id.

 Discussion
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

¶ 21 On appeal, Home Depot argues that the trial court erred in denying its motion

 to dismiss or stay in favor of arbitration. Home Depot claims that the trial court erred

 by (1) concluding that Home Depot was not entitled to enforce the arbitration

 agreement found in the Card Agreement, either as a third-party beneficiary or under

 the doctrine of equitable estoppel; (2) failing to make findings of fact regarding the

 Card Agreement; and (3) concluding that a novation occurred upon execution of the

 Home Depot Agreement.

 I. Existence of an Arbitration Agreement

¶ 22 Of the various contracts at issue in this case, the Home Depot Agreement is

 the only one to which Home Depot is a signatory, and the Home Depot Agreement

 does not contain an arbitration clause. Nevertheless, Home Depot argues that it is

 entitled to enforce the arbitration agreement found in the Card Agreement, either as

 a third-party beneficiary or under the doctrine of equitable estoppel.

 A. Standard of Review and Applicable Legal Principles

¶ 23 “North Carolina has a strong public policy favoring the settlement of disputes

 by arbitration.” Johnston Cty. v. R.N. Rouse & Co., 331 N.C. 88, 91, 414 S.E.2d 30, 32

 (1992). “However, before a dispute can be settled in this manner, there must first

 exist a valid agreement to arbitrate. . . . The party seeking arbitration bears the

 burden of proving the parties mutually agreed to the arbitration provision.” King v.

 Owen, 166 N.C. App. 246, 248, 601 S.E.2d 326, 327 (2004) (citation and internal
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 quotation marks omitted).

¶ 24 On appeal, findings of fact made by the trial court are binding upon the

 appellate court in the absence of a challenge to those findings. Id. “The party seeking

 arbitration must show that the parties mutually agreed to arbitrate their disputes.

 The trial court’s findings regarding the existence of an arbitration agreement are

 conclusive on appeal where supported by competent evidence, even where the

 evidence might have supported findings to the contrary.” Slaughter v. Swicegood, 162

 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004) (citations and internal quotation

 marks omitted). “The question of whether a dispute is subject to arbitration is an

 issue for judicial determination. A trial court’s conclusion as to whether a particular

 dispute is subject to arbitration is a conclusion of law,” which this Court reviews de

 novo. Pressler, 199 N.C. App. at 590, 685 S.E.2d at 9 (citation omitted).

¶ 25 The determination of whether a particular dispute is subject to arbitration

 “involves a two-step analysis requiring the trial court to ascertain both (1) whether

 the parties had a valid agreement to arbitrate, and also (2) whether the specific

 dispute falls within the substantive scope of that agreement.” Slaughter, 162 N.C.

 App. at 461, 591 S.E.2d at 580 (citation and internal quotation marks omitted).

¶ 26 The first step of this analysis—whether the parties had a valid agreement to

 arbitrate—is the issue presented in this case.

 B. Third-Party Beneficiary Status
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

¶ 27 Home Depot first argues that under South Dakota law, it is a third-party

 beneficiary of the Card Agreement. We disagree.

¶ 28 “Under South Dakota law, a contract made expressly for the benefit of a third

 person may be enforced by him at any time before the parties thereto rescind it.”

 Jennings v. Rapid City Reg’l Hosp., Inc., 802 N.W.2d 918, 921 (S.D. 2011) (citation

 and internal quotation marks omitted). “This does not, however, entitle every person

 who received some benefit from the contract to enforce it.” Sisney v. State, 754 N.W.2d

 639, 643 (S.D. 2008) (emphasis added). South Dakota law “requires that at the time

 the contract was executed, it was the contracting parties’ intent to expressly benefit

 the third party. And, even then, not all beneficiaries qualify: incidental beneficiaries

 are not entitled to third-party beneficiary status.” Id.; accord Jennings, 802 N.W.2d

 at 922 (“The terms of the contract must clearly express intent to benefit that party or

 an identifiable class of which the party is a member.” (citation omitted)). In this

 respect, South Dakota law is substantively in accord with North Carolina law. See,

 e.g., Revels v. Miss Am. Org., 182 N.C. App. 334, 336, 641 S.E.2d 721, 723 (“It is not

 enough that the contract, in fact, benefits the third party, if, when the contract was

 made, the contracting parties did not intend it to benefit the third party directly.”),

 disc. review denied, 361 N.C. 430, 648 S.E.2d 844 (2007).

¶ 29 In the present case, Home Depot argues that the trial court erred by declining

 to enforce the arbitration clause of the Card Agreement, as requested by Home Depot.
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 The trial court explained that “as the express language of the Home Depot Agreement

 provides, Home Depot is not a party to separate financing agreements. [Thus], . . .

 any separate loan or financing agreement between only Mr. Jackson and CitiBank

 does not serve as an agreement to arbitrate between the parties to this action.”

¶ 30 In response, Home Depot asserts that, by its own terms, the arbitration clause

 of the Card Agreement covers “[c]laims made by or against anyone connected with us

 or you or claiming through us or you,” and that this language authorizes it to compel

 arbitration in this case. Home Depot further argues that Jackson’s “decision to bring

 Home Depot into the action that Citibank initiated under the Card Agreement leaves

 no doubt that [Jackson] himself saw Home Depot as ‘connected with’ Citibank for

 purposes of the Card Agreement and [Jackson]’s transaction.”

¶ 31 However, by its own terms, the Card Agreement does not provide Home Depot

 with the authority to compel arbitration. In White v. Sunoco, Inc., 870 F.3d 257 (3d

 Cir. 2017), the United States Court of Appeals for the Third Circuit analyzed a similar

 argument regarding identical language in another Citibank credit-card agreement.

 Although White is not binding authority on this Court, we are nevertheless persuaded

 by the Third Circuit’s analysis and adopt its reasoning here.

¶ 32 The plaintiff in White sued Sunoco, alleging fraud on behalf of a putative class,

 and Sunoco similarly sought to enforce an arbitration agreement contained in a

 Citibank card agreement to which it was not a signatory. Id. at 259. The Third Circuit
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 rejected Sunoco’s argument:

 Sunoco’s argument fails because it confuses the nature of
 the claims covered by the arbitration clause with the
 question of who can compel arbitration. Even if Sunoco is
 “connected” with Citibank and the claims against Sunoco
 are covered claims, that does not give Sunoco the right to
 elect to arbitrate against White. The arbitration clause of
 the Cardholder Agreement establishes unequivocally that
 “[e]ither you or we may, without the other’s consent, elect
 mandatory, binding arbitration for any claim, dispute, or
 controversy between you and us (called ‘Claims’).”
 Moreover, the clause also provides, “At any time you or we
 may ask an appropriate court to compel arbitration of
 Claims.” The Cardholder Agreement defines “you” as the
 card holder and “we” and “us” as Citibank. Nowhere does
 the agreement provide for a third party, like Sunoco, the
 ability to elect arbitration or to move to compel arbitration.

 Id. at 267–68 (emphases added) (citations omitted).

¶ 33 The arbitration clause of the Citibank agreement in White contained the same

 “anyone connected with us” language regarding claims covered by the arbitration

 clause as does the Card Agreement at issue in this case. Id. at 261. The Card

 Agreement at issue here contains the same pertinent language as the arbitration

 clause in White, including the definitions and the statements as to who may compel

 arbitration. Although not binding authority, we find White to be directly on point and

 persuasive. The Card Agreement does not provide Home Depot with the authority to

 compel arbitration.

¶ 34 Home Depot also argues that the trial court erred by ignoring that (1) Jackson
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 entered into the Card Agreement “for the sole purpose of purchasing his water

 treatment system”; (2) the Card Agreement “is replete with references to Home

 Depot”; and (3) Jackson “agreed to allow Citibank to share information with Home

 Depot about [his] transaction history and experiences with the credit card.” Home

 Depot asserts that, taken together, these considerations “compel the conclusion that

 the Card Agreement was intended to benefit Home Depot.”

¶ 35 These assertions are meritless. Again, we find White persuasive. Sunoco

 presented a similar argument before the Third Circuit, which was “skeptical of

 whether the joint marketing campaign between Sunoco and Citibank could make

 Sunoco a ‘connected’ entity under the arbitration clause.” Id. at 268. The card

 agreement in White again contained identical language to the Card Agreement at

 issue here, providing that arbitration could be invoked for any claims “made by or

 against anyone connected with us or you or claiming through us or you, such as a co-

 applicant or authorized user of your account, an employee, agent, representative,

 affiliated company, predecessor or successor, heir, assignee, or trustee in

 bankruptcy.” Id.

¶ 36 The Third Circuit concluded that Sunoco was not intended to be a third-party

 beneficiary of the card agreement, particularly with regard to the arbitration clause:

 [N]one of these enumerated relationships apply to Sunoco,
 and Sunoco is not even mentioned in the Cardholder
 Agreement. Additionally, while the enumerated items are
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 preceded by “such as,” the relationships listed evoke far
 closer connections—ones where rights and obligations are
 intertwined and where liability may be shared—than the
 one that Sunoco purports to have with Citibank in this
 case. The clause read in context suggests that the parties
 did not intend for it to govern an entity with merely a
 marketing relationship with Citibank.

 Id.

¶ 37 While Home Depot attempts to distinguish White by noting that it is mentioned

 throughout the Card Agreement in this case, that is a distinction without a difference;

 with the sole exception of the term allowing Citibank to share transaction history

 with Home Depot, every reference to Home Depot is merely an identification of the

 branded credit card. These references to the name of the card, with the isolated

 support of the transaction-history term, do not provide a sufficient “rationale for why

 its marketing agreement with Citibank confers on it a close enough relationship to

 merit coverage by this clause.” Id.

¶ 38 Competent evidence in the record supports the trial court’s conclusion that

 Home Depot was not a third-party beneficiary of the Card Agreement. The trial

 court’s conclusion is thus binding on appeal. See Slaughter, 162 N.C. App. at 461, 591

 S.E.2d at 580. Home Depot’s argument is overruled.

 C. Equitable Estoppel

¶ 39 Home Depot also argues that Jackson is equitably estopped from claiming that

 Home Depot cannot compel arbitration under the Card Agreement. We first note that
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 Jackson maintains that Home Depot did not raise this argument before the trial court

 and asserts that it cannot argue it for the first time on appeal. Home Depot responds

 that it “did argue equitable estoppel before the trial court in both its briefing and

 proposed order on the arbitration motion[,]” but that Jackson “refused to consent to

 including the parties’ motion briefing in the record on appeal.”

¶ 40 Under Rule 11 of the North Carolina Rules of Appellate Procedure, the

 appellant bears the burden of settling the record on appeal. Where one party objects

 to the inclusion of an item or items in the record on appeal, “then that item shall not

 be included in the printed record on appeal, but shall be filed by the appellant with

 the printed record on appeal in a volume captioned ‘Rule 11(c) Supplement to the

 Printed Record on Appeal[.]’ ” N.C.R. App. P. 11(c). Home Depot did not file a Rule

 11(c) Supplement in this appeal, so we are unable to definitively discern whether it

 argued the issue of equitable estoppel at the trial court below. However, even

 assuming that this issue is properly before us, equitable estoppel does not apply to

 the case at bar.

¶ 41 Home Depot argues before this Court that equitable estoppel is “a doctrine

 which prevents a party from asserting a right that he otherwise would have had

 against another when his conduct would make the assertion of those rights contrary

 to equity.” LSB Fin. Servs., Inc. v. Harrison, 144 N.C. App. 542, 548, 548 S.E.2d 574,

 579 (2001) (citation and internal quotation marks omitted). However, in LSB and the
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 other authorities cited by Home Depot, the courts applied the doctrine of equitable

 estoppel where a signatory to a contract containing an arbitration clause sought to

 enforce the clause against a non-signatory that was claiming that other provisions of

 the contract should be enforced to its benefit. Id. at 548–49, 548 S.E.2d at 579; see

 also Int’l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411,

 418 (4th Cir. 2000). These cases are inapposite in the factual setting of the case at

 bar, in which Home Depot is seeking to enforce an arbitration clause in an agreement

 to which it was not itself a signatory.

¶ 42 In contrast to the cases cited by Home Depot, in which a plaintiff seeks to avoid

 arbitration while suing to enforce other provisions of the same contract that provides

 for the authority to compel arbitration, here, Jackson’s claims all arise from alleged

 violations of North Carolina’s statutes prohibiting referral sales and unfair or

 deceptive trade practices—Jackson’s claims do not arise from any alleged violation of

 the terms or conditions of the Card Agreement, and he does not seek to enforce any

 provision of the Card Agreement. Therefore, because Jackson is “not seeking a direct

 benefit from the provisions of the [Card Agreement], we conclude that the doctrine of

 equitable estoppel cannot be used to force [him] to arbitrate” his claims. Ellen v. A.C.

 Schultes of Md., Inc., 172 N.C. App. 317, 322–23, 615 S.E.2d 729, 733 (2005), cert.

 and disc. review denied, 360 N.C. 575, 635 S.E.2d 430 (2006); see also White, 870 F.3d

 at 265 (“[E]ven if the Card Agreement contained entirely different terms—for
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 example, about the interest rate, credit limit, billing address, annual membership

 fee, foreign transaction fees, payment schedules, credit reporting rules, or even the

 arbitration agreement—that would not have any bearing on the validity of White’s

 claims against Sunoco regarding its allegedly fraudulent promise . . . . Accordingly,

 White cannot be required to arbitrate based on the Card Agreement[.]”).

¶ 43 Thus, assuming that this issue is properly before us, Home Depot has not

 shown that Jackson is equitably estopped from arguing that Home Depot cannot

 compel arbitration under the Card Agreement. Home Depot’s argument is overruled.

 II. Findings of Fact

¶ 44 We next address Home Depot’s argument that the trial court erred by failing

 to make findings of fact regarding the Card Agreement. We disagree.

¶ 45 “This Court has repeatedly held that an order denying a motion to compel

 arbitration must include findings of fact as to whether the parties had a valid

 agreement to arbitrate and, if so, whether the specific dispute falls within the

 substantive scope of that agreement.” Cornelius v. Lipscomb, 224 N.C. App. 14, 16,

 734 S.E.2d 870, 871 (2012) (citation and internal quotation marks omitted); accord

 United States Tr. Co., N.A. v. Stanford Grp. Co., 199 N.C. App. 287, 290, 681 S.E.2d

 512, 514 (2009) (“This Court has stressed repeatedly that, in making this

 determination, the trial court must state the basis for its decision in denying a

 defendant’s motion to stay proceedings pending arbitration in order for this Court to
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 properly review whether or not the trial court correctly denied the defendant’s

 motion.” (citation and internal quotation marks omitted)). “When a trial court fails to

 include findings of fact in its order, this Court has repeatedly reversed and remanded

 to the trial court for a new order containing the requisite findings.” Cornelius, 224

 N.C. App. at 16–17, 734 S.E.2d at 871.

¶ 46 However, it is well settled that “[t]he labels ‘findings of fact’ and ‘conclusions

 of law’ employed by the trial court in a written order do not determine the nature of

 our review.” Westmoreland v. High Point Healthcare Inc., 218 N.C. App. 76, 79, 721

 S.E.2d 712, 716 (2012). “Generally, any determination requiring the exercise of

 judgment or the application of legal principles is more properly classified a conclusion

 of law. On the other hand, any determination reached through logical reasoning from

 the evidentiary facts is more properly classified a finding of fact.” Peters v.

 Pennington, 210 N.C. App. 1, 15, 707 S.E.2d 724, 735 (2011) (citations and internal

 quotation marks omitted).

¶ 47 The trial court did not make any findings of fact concerning the Card

 Agreement within the “Findings of Fact” section of its order, but it did make a finding

 of fact concerning that Agreement in its “Conclusions of Law” section:

 The Court also notes Third-Party Defendants’ contention
 that an arbitration provision in a CitiBank credit card
 agreement is a basis for their motion to compel arbitration;
 however, as the express language of the Home Depot
 Agreement provides, Home Depot is not a party to separate
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 financing agreements.

 (Emphasis added). The italicized language is more properly described as a

 “determination reached through logical reasoning from the evidentiary facts” than

 one “requiring the exercise of judgment or the application of legal principles[.]” Id.

 (citation and internal quotation marks omitted). Thus, Home Depot is not correct that

 the trial court made no findings of fact regarding the Card Agreement.

¶ 48 Further, we note that Cornelius, and the cases it cites, stand for the proposition

 that “an order denying a motion to compel arbitration must include findings of fact

 as to whether the parties had a valid agreement to arbitrate[.]” 224 N.C. App. at 16,

 734 S.E.2d at 871 (emphasis added) (citation and internal quotation marks omitted).

 Although it may not contain the findings of fact that Home Depot preferred, the trial

 court’s order nevertheless satisfied this mandate. Our precedent does not compel us

 to reverse and remand to the trial court for the entry of further findings of fact as to

 a separate and distinct agreement that the trial court properly concluded did not

 govern “the parties to this action.” Home Depot’s argument is overruled.

 III. Novation

¶ 49 Lastly, Home Depot argues that the trial court erred in concluding that a

 novation occurred upon execution of the Home Depot Agreement, thereby

 extinguishing the CWS Purchase Agreement. We disagree.

¶ 50 “A novation is the substitution of a new contract for an old one which is thereby
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 extinguished.” Intersal, Inc. v. Hamilton, 373 N.C. 89, 98, 834 S.E.2d 404, 412 (2019)

 (citation omitted). “The essential requisites of a novation are a previous valid

 obligation, the agreement of all the parties to the new contract, the extinguishment

 of the old contract, and the validity of the new contract.” Id. (citation omitted).

 Whether a novation occurred is a question of law, which this Court reviews de novo.

 See Anthony Marano Co. v. Jones, 165 N.C. App. 266, 269, 598 S.E.2d 393, 395 (2004).

¶ 51 Our Supreme Court has explained that, in determining whether a novation

 has occurred,

 the intent of the parties governs. If the parties do not say
 whether a new contract is being made, the courts will look
 to the words of the contracts, and the surrounding
 circumstances, if the words do not make it clear, to
 determine whether the second contract supersedes the
 first. If the second contract deals with the subject matter of
 the first so comprehensively as to be complete within itself
 or if the two contracts are so inconsistent that the two
 cannot stand together a novation occurs.

 Intersal, 373 N.C. at 98–99, 834 S.E.2d at 412 (citation omitted).

¶ 52 As regards this issue, the trial court determined:

 4. Although CWS and Mr. Jackson entered into the initial
 CWS Purchase Agreement on July 25, 2014, the parties to
 this action agreed to the Home Depot Agreement on August
 6, 2014.

 5. The plain language on the face of the Home Depot
 Agreement makes it clear that the parties expressly
 intended for the Home Depot Agreement to supersede the
 CWS Purchase Agreement.
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 6. Moreover, the Home Depot Agreement deals with the
 subject matter of the CWS Purchase Agreement so
 comprehensively as to be complete within itself.

 7. The CWS Purchase Agreement was therefore
 extinguished upon the execution of the Home Depot
 Agreement and, accordingly, the Home Depot Agreement
 is the sole, operative agreement between the parties to this
 action.

 8. As a result, because the Home Depot Agreement does not
 contain an arbitration clause, the Court concludes that no
 agreement to arbitrate exists between the parties to this
 action.

¶ 53 Home Depot argues that the trial court erred because “Home Depot was not a

 party to the [CWS] Purchase Agreement, and CWS was not a party to the Home

 [Depot] Agreement.” However, John Blum—the President of CWS—signed the Home

 Depot Agreement on a signature line labeled “Professional/Authorized

 Representative on Home Depot’s Behalf.” This alone is competent evidence to support

 the trial court’s findings, and eventual conclusion, that a novation occurred.

¶ 54 Home Depot also argues that the Home Depot Agreement “does not even

 reference the [CWS] Purchase Agreement, much less demonstrate an intent to

 ‘supersede’ it.” However, this contention is meritless, as the explicit language of the

 Home Depot Agreement’s merger clause supports the trial court’s conclusion:

 [T]his Agreement constitutes the entire understanding
 between You and Home Depot and may only be amended
 by a Change Order signed by Home Depot (or by
 Installation Professional or its authorized representative
 on Home Depot’s behalf) and You. This Agreement
 JACKSON V. HOME DEPOT, U.S.A., INC.

 2021-NCCOA-95

 Opinion of the Court

 expressly supersedes all prior written or verbal agreements
 or representations made by Home Depot, Installation
 Professional, You, or anyone else.

 (Emphasis added).

¶ 55 On the same page, the Home Depot Agreement defines “Installation

 Professional” as “an independent contractor authorized by Home Depot (licensed and

 insured as required by Home Depot and applicable law) and the contractor’s

 employees, agents and subcontractors.” Indeed, in an unchallenged finding of fact—

 which is thus binding on appeal, King, 166 N.C. App. at 248, 601 S.E.2d at 327—the

 trial court noted that “CWS is the ‘Installation Professional’ or ‘Professional’ as

 defined in the Home Depot Agreement.”

¶ 56 Accordingly, there is sufficient evidence to support the trial court’s conclusion

 that the Home Depot Agreement, by its own terms, expressly superseded the CWS

 Purchase Agreement. Home Depot’s argument is overruled.

 Conclusion

¶ 57 For the foregoing reasons, the trial court did not err by denying Home Depot’s

 motion to dismiss or stay in favor of arbitration. Accordingly, we affirm the trial

 court’s order.

 AFFIRMED.

 Judges WOOD and JACKSON concur.